UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>BOYD KEITH HICKMAN,<br><br>  Defendant. | Case No. 4:11-cr-00223-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

The Court has before it Defendant Boyd K. Hickman's Motion to Suppress Vehicle Search (Dkt. 17). Hickman asks the Court to suppress from introduction at trial any evidence or contraband seized from Hickman's vehicle during a traffic stop search of his vehicle on June 11, 2011. Hickman maintains that the officer did not have probable cause to conduct the search, and any consent given was not voluntary. For the reasons set forth below, the Court will grant the motion to suppress.

## BACKGROUND

On June 11, 2011, Idaho State Trooper Corporal Vance Cox pulled over Defendant Hickman for a suspected window tint violation. The stop was made at 9:33 a.m. on Interstate 15, in Jefferson County. Most of the stop was recorded on video.

Upon stopping Hickman, Officer Cox noted that Hickman's eyes were "watery" and "very bloodshot," and he was "fidgety" and breathing heavily. The window tint check showed only 15% total light transmitted on the front passenger side – a violation of Idaho law. While running the driver's check on Hickman, Officer Cox notice a faint odor of marijuana on Hickman's driver's license. Based on these observations, Officer Cox asked Hickman to exit his vehicle and submit to field sobriety testing. Officer Cox also inquired about a blanket that covered Hickman's lap. In response, Hickman removed the blanket, revealing that his pants were pulled down to the middle of his thigh. Hickman asked to put them back on before exiting the car. Hickman did so, and exited the vehicle to conduct the field sobriety tests.

After administering the field sobriety tests, Officer Cox determined that he had not seen enough indicators of intoxication and discontinued the DUI investigation. The trooper then noted in his report that he turned his emergency lights from 360 degrees to rear flashers, and then handed Hickman's paperwork back to Hickman. Upon returning Hickman's paperwork, Officer Cox told Hickman that he would not charge him with a DUI, and Hickman was free to go.

After telling Hickman he was free to go, Officer Cox immediately launched into questioning Hickman about his bloodshot eyes and the faint marijuana smell on his driver's license:

> . . . not going to do anything on the DUI, okay, you're free to go. I just want to ask you where you've got the bloodshot eyes, I see some indications – at one point your license has been around marijuana. I'm not saying you've used but someone has because the odor's on there.

*Transcript* at 1, Ex. 1 to Gov't's Resp. Br., Dkt. 21-1. Hickman explained in response to Officer Cox's question that his roommate had a prescription for medical marijuana, but Hickman denied having any marijuana in his car.

Despite Hickman's denial, Officer Cox continued to question Hickman, telling him that he could call for a drug dog:

> I usually have to have a dog come up and go around the car and see if he indicates anything. Understand, if a dog did come up here I'd much rather you tell me before a dog hits on anything in your car.

*Id.* Hickman again denied having marijuana in his car, and Officer Cox again indicated that he could call for a drug dog. He also suggested that it would be faster if Hickman told him whether he had any marijuana:

> "It'd save us some time, not sure if this guy has a dog or not, to save us some time if here is anything, I'd rather you tell me whether . . .."

*Id.* Hickman shook his head in denial, but Officer Cox persisted in his questioning:

> Hickman: (Shaking head)
>
> Trooper: Are you responsible for everything in there?
>
> Hickman: Yeah

> Trooper: Okay, you're a hundred percent sure? And no large amounts of cash or nothing like that, huh?
>
> Hickman: No just what's in my wallet.
>
> Trooper: Okay, yeah, how much do you have there approximately?
>
> Hickman: I've got my wallet in there. . .a couple hundred dollars.
>
> Trooper: But there's not thousands of dollars?
>
> Hickman: No, no, no
>
> Trooper: And there's not even user amount of pot or anything like that?
>
> Hickman: No

*Id.*

Still skeptical, Officer Cox asked Hickman whether he would consent to a search of his car, again suggesting to Hickman that it would be faster to consent rather than wait for a drug dog:

> Okay, alright. . . well, what I'd like then. . .speed it up then, rather than wait for a dog, would you mind, if I, I'd like to search real, like that, quick, and see if there's nothing in there.

*Id.*

About the time Officer Cox suggested to Hickman that it would be quicker to allow a search of the vehicle rather than wait for the arrival of a drug dog, two Madison County Sherriff Deputies arrived on the scene to assist. When they arrived, Officer Cox motioned to them to remain in their vehicle. They remained in their vehicles, and Officer Cox apparently obtained Hickman's consent to search his car.

Only after Officer Cox obtained Hickman's consent did Cox indicate to the deputies to exit their car and assist him. Officer Cox and one of the deputies then searched Hickman's vehicle and found the short-barreled shotgun that forms the basis of this prosecution. Hickman does not dispute that Officer Cox properly stopped Hickman for the suspect tinted window violation, but Hickman argues that the gun found during the search should be suppressed because Officer Cox did not have probable cause to conduct the search, and Hickman did not voluntarily consent to the search.

## ANALYSIS

No one disputes that an adequate basis for the traffic stop existed because of the officer's belief that he observed a window tint violation. During such a stop, an officer may ask the driver to exit a stopped vehicle, as occurred here. Nor is there any dispute that Officer Cox had a valid basis for conducting a field sobriety test based on Hickman's "watery" and "bloodshot" eyes, his nervousness, and the faint odor of marijuana emanating from his license. Hickman, however, passed the field sobriety test, and Officer Cox told him he was free to go. The question therefore remains whether the subsequent search of Hickman's vehicle was valid based either on probable cause or Hickman's voluntary consent.

The Fourth Amendment protects individuals against unreasonable searches and seizures, "and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002).

This Fourth Amendment guarantee is "preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390 (1985). In certain circumstances, however, a search may comport with the Fourth Amendment reasonableness standard even though not conducted pursuant to a warrant. *Id.* One such exception is the "automobile exception," which allows a roadside stop of an automobile to search that vehicle without a warrant if probable cause exists to believe that contraband or evidence of criminal activity is located inside. *See Chambers v. Maroney*, 399 U.S. 42 (1970).

Probable cause for an automobile search exists if the facts and circumstances known by the police when they begin the search are 'sufficient in themselves' for a person 'of reasonable caution' to believe that contraband or evidence of criminal activity was in the vehicle. *Safford Unified School Dist. No. 1 v. Redding*, 129 S.Ct. 2633, 2639 (2009). The assessment of probable cause is to be based on objective facts that would justify issuance of a warrant. *United States v. Ross,* 456 U.S. 798, 808 (1982)

The Ninth Circuit has held that "a strong odor of marijuana emanating from a vehicle can constitute probable cause to search the vehicle." *United States v. Guzman–Padilla,* 573 F.3d 865, 886 n. 5 (9th Cir. 2009). The Court, however, concludes in this case that the faint smell of marijuana on Hickman's license did not justify a search of his car. When questioned about the smell of marijuana on his license, Hickman explained that his roommate has a prescription for medical marijuana. While this explanation standing alone may not have excused Hickman, other factors support a finding of no

probable cause: Hickman passed the field sobriety test; he was never resistant or confrontational; he appeared coherent in the video; and neither his clothes nor his car smelled of marijuana. Even Officer Cox, who was present at the scene, questioned whether he had probable cause to search the vehicle. While this has no legal bearing on the issue because the existence of probable cause is based on objective facts, it suggests that perhaps that the proper level of justification did not exist for the search.

Without probable cause, the validity of the search depends on Hickman's purported consent. Here, Hickman argues that Officer Cox continued to detain him illegally after telling him he was free to go, and therefore his consent was not voluntary. The Court agrees.

Once Officer Cox returned Hickman his license and document and advised that he was free to go, the purpose for the stop came to an end. If Hickman was detained after that point, his continued seizure violated the Fourth Amendment since it would have then exceeded the permissible scope of the stop. "Generally, an investigative detention must "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500 (1983). A driver must be permitted to proceed after a routine traffic stop after the officer determines that no reason to detain the driver remains unless the officer has a reasonable articulable suspicion of other crimes or the driver voluntarily consents to further questioning. *Id.*

A traffic stop may become a consensual encounter if the officer returns the license and registration and asks questions without further constraining the driver by a show of

authority that would give the driver objective reasonable cause to believe that he is not free to leave. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). By contrast, so long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

     Here, after telling Hickman that he was free to go, Officer Cox immediately launched – without pause – into interrogating Hickman about the marijuana smell. Office Cox then told Hickman that he would usually deploy a drug dog at this point, and suggested strongly that unless Hickman gave his consent, he would be delayed while they waited for the drug dog to arrive. After continuing to interrogate Hickman for several minutes and mentioning the option of waiting for a drug dog three times, Officer Cox presented Hickman with the alternative of consenting to a search of his car. Simultaneous with this request to search, a second law enforcement vehicle arrived with two Madison County deputies.

     Based on Officer Cox's continued display of authority through his sustained questioning, his repeated suggestion that Hickman would not be allowed to leave until the drug dog was called, and the appearance of two additional law enforcement officers, an individual in Hickman's place would have reasonably believed he was not at liberty to ignore the police presence and go about his business. "Confronted with this situation, a reasonable motorist – even with license and registration in hand – most likely would not have believed he could disregard the officer's inquiry and end the conversation." *United*

*States v. Chavez–Valenzuela,* 268 F.3d 719, 725 (9th Cir. 2001), *amended by,* 279 F.3d 1062 (9th Cir. 2002). The Court therefore concludes that Hickman was illegally seized within the meaning of the Fourth Amendment at the time he consented to the search.

"Under the Fourth Amendment ... evidence obtained subsequent to an illegal investigation is tainted by the illegality and thus inadmissible, notwithstanding ... consent, unless subsequent events have purged the taint." *U.S. v. Bautista* , 362 F.3d 584, 592 (9th Cir. 2004) (quoting *Chavez–Valenzuela,* 268 F.3d at 727. "In determining whether the taint has been sufficiently purged, we ask whether, granting establishment of the primary illegality, the evidence has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (citation, internal quotation marks, and alteration omitted). Factors to be considered in answering whether the consent is sufficiently removed from the taint of the illegal seizure include the length of time between the illegal seizure and the subsequent search, the presence of intervening circumstances, and the purpose and flagrancy of the circumstances. *Brown v. Illinois,* 422 U.S. 590, 603 (1975).

Considering these factors, the Court finds that the consent to search was not sufficiently attenuated from the illegal seizure to dissipate the taint of Hickman's illegal detention. As already discussed, there was no time lapse between the illegal detention and the request to search. And none of the circumstances broke or weakened the connection between the illegal detention and the request to search. In fact, the two are directly linked. Accordingly, the Court concludes that Hickman's consent was not

voluntary. The short-barreled shot gun found during the search will therefore be suppressed.

## ORDER

**IT IS ORDERED that** Defendant Boyd Keith Hickman's Motion to Suppress is (Dkt. 17) is **GRANTED**.

DATED: May 21, 2012

B. Lynn Winmill
Chief Judge
United States District Court